(16 App. Div. 107.)

PEOPLE ex rel. FERGUSON v. NEFF et al.

(Supreme Court, Appellate Division, Second Department. April 26, 1897.)

TAXATION—ASSESSMENT—TERRITORY ANNEXED TO BROOKLYN.

Laws 1894, c. 449, § 13, provides that "real estate included within the territory hereby annexed [to the city of Brooklyn] shall be assessed at the value of the land for agricultural purposes unless the same shall have been at the time this act shall take effect or shall thereafter be divided up into building lots and a map thereof filed * * * and a sale or sales referring to such map made, or unless the same shall have been otherwise sold as a building lot, or used as such." *Held*, that real estate within such territory was not taxable as city lots merely because it had been divided into building lots, and a map thereof filed, before the statute was passed.

Appeal from special term, Kings county.

Certiorari by Thomas Ferguson against Barzillai G. Neff and others, constituting the board of assessors of the city of Brooklyn. From an order vacating and setting aside an assessment on the property of relator, and ordering a reassessment thereof, under Laws 1896, c. 908, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

R. A. Breckinridge, for appellants.

B. P. Stratton, for respondent.

WILLARD BARTLETT, J. The relator's lands are situated in what was formerly the town of Gravesend; and he insists that, under

the act of the legislature by which that town became the Thirty-First ward of the city of Brooklyn, these lands can properly be assessed at their value for agricultural purposes only, and should not be valued as city building lots for the purpose of assessment. The learned judge who heard the case at special term has agreed with him, and the assessors have appealed.

In chapter 449 of the Laws of 1894, by which Gravesend was annexed to Brooklyn, is the following provision:

"Sec. 13. For the purposes of taxation, the real estate included within the territory hereby annexed shall be assessed at the value of the land for agricultural purposes, unless the same shall have been at the time this act shall take effect or shall thereafter be divided up into building lots, and a map thereof filed in the office of the register of deeds of the county of Kings, or in the office of the board of assessors of the city of Brooklyn, and a sale or sales referring to such map made, or unless the same shall have been otherwise sold as a building lot or used as such."

The case was determined below upon the petition, the writ of certiorari, and the return of the assessors, without taking any proofs; and consequently the facts set out in the return must be regarded as established for the purposes of this proceeding. The return alleges that the relator's property "has heretofore, and prior to the enactment of chapter 449 of the Laws of 1894, been cut up and divided into blocks and lots, with streets regularly laid out and dividing the same." It denies any knowledge or information on the part of the assessors as to whether any map of said property was filed by the petitioner in the register's office of Kings county, or whether such filing, if any, was authorized; but it further alleges "that the map of the town of Gravesend now on file in the office of the board of assessors of the city of Brooklyn displays said property thereon by block and lot number, divided by streets regularly laid out, and that the assessment upon said property was made in accordance with the divisions made upon said map."

It is not suggested that any sales of the relator's property have ever been made, referring to this or any other map, or that any of the land has been otherwise sold as a building lot, or used as such. The assessors take the position, however, that the provisions of section 13 of the annexation act, as to the filing of a map and the making of sales referring to such map, have no application to a case where the property was divided up into building lots before or when the statute took effect. The rule laid down by that section, to the effect that real estate in the annexed territory of the town of Gravesend shall be assessed at the value of the land for agricultural purposes, is treated by the learned counsel for the appellants as establishing pro tanto an exemption from taxation. Hence he insists that the provisions of the section must be strictly construed, and he asks us to hold that it was the intention of the legislature to exclude from the exemption (i. e. from the privilege of having his property assessed as agricultural lands) every landowner whose premises had been divided into building lots when the town of Gravesend was annexed, whether or not any map had been filed or sales made in reference thereto. I do not see how we can adopt any such construction without doing violence to the plain language of the statute. If the legislature had

in mind the scheme suggested by counsel, it has failed to express its true intention, and we cannot undertake to supply the deficiency. But there is in fact no difficulty in giving to the section a rational interpretation, capable of practical application. This has been done by the court at special term. This part of the Gravesend annexation act is to be regarded as prescribing a general rule of taxation to be applied to the acquired territory, rather than as a provision for the exemption of property there situated. Giving to its language the ordinary meaning of the words used, it requires all the real estate in the annexed district to be assessed at the value of the land for agricultural purposes, with certain exceptions. These exceptions comprise three classes of property: (1) Real estate divided up into building lots, a map of which has been filed in the office of the register or the board of assessors, and a sale of which has been made, referring to such map; (2) real estate otherwise sold as a building lot; and (3) real estate used as a building lot. It is clear that the property of the relator does not fall within any of these exceptions. The return of the assessors expressly states that they do not deny that his property is now, and always has been, used for farming purposes alone; and I have already shown that there is no pretense that any sales with reference to a map have ever been made.

Section 3 of title 10 of the charter of the city of Brooklyn (see Laws 1895, c. 1015) requires that all assessments shall refer to ward maps where they exist. The Gravesend annexation act provided that all public books, papers, and documents of the town on file in any office, or with any officer thereof, should be transferred to and filed with the appropriate officers or departments of the city of Brooklyn. It is said in behalf of the appellants that the map mentioned in the return came to the assessors under this provision, and the suggestion is that it therefore became their duty to assess the relator's property according to that map, upon which it appeared by block and lot number. The return, however, wholly fails to show that the map spoken of therein came to the assessors from the town of Gravesend under the statute, or that it ever constituted a public record there or anywhere else. For all that appears, it may have been procured by the assessors themselves from the manufacturer, and filed in their office on the day they made the assessment.

The order of the special term should be affirmed, with $10 costs and disbursements. All concur.